*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellant

**v.**

**Robert J. HERNANDEZ, Airman Basic**
United States Air Force, Appellee

**No. 21-0137**
Crim. App. No. 39606

Argued May 26, 2021—Decided August 12, 2021

Military Judge: John C. Degnan

For Appellant: *Mary Ellen Payne,* Esq. (argued); *Colonel Shaun S. Speranza, Lieutenant Colonel Matthew J. Neil,* and *Major Jessica L. Delaney* (on brief).

For Appellee: *Major Jenna M. Arroyo* (argued); *Lieutenant Colonel Todd Fanniff* (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS and Judge MAGGS, and Senior Judge STUCKY, joined.

————————

Judge HARDY delivered the opinion of the Court.

After a urinalysis test indicated the presence of cocaine in Appellee's system, a military judge sitting as a general court-martial convicted Appellee of one specification of wrongful use of a controlled substance in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2012). At trial, Appellee unsuccessfully argued that the results of the urinalysis test should be suppressed because the search authorization used to obtain his urine was based on material misstatements and omissions by the law enforcement officers. On appeal, however, the United States Air Force Court of Criminal Appeals (AFCCA) agreed with Appellee, holding that the military judge erred by denying Appellee's motion to suppress, and set aside his findings and sentence. *United States v. Hernandez*, No. ACM 39606, 2020 CCA LEXIS 362, at *47, 2020 WL 5988195, at *14 (A.F. Ct. Crim.

App. Oct. 8, 2020) (unpublished). The Judge Advocate General (TJAG) of the Air Force certified two issues to this Court for review:

> I. Whether Appellee waived a challenge to the search authorization for his urine on the basis of knowing and intentional falsity or reckless disregard for the truth.

> II. Whether the military judge properly admitted evidence of Appellee's urinalysis.

We need not answer the first question because we hold that the results of the urinalysis were properly admitted into evidence under the good faith exception to the exclusionary rule. We therefore reverse.

## I. Background

The questions certified for our review arise from Appellee's second court-martial, which took place after he was released from fifteen months of confinement for cocaine-related offenses. On March 9, 2018—after Appellee was processed out of confinement, but before he was fully discharged from the military—Appellee moved into an on-base dorm room at Vandenberg Air Force Base.

On April 3, 2018, a team of four investigators from the base security force conducted a drug sweep of the dorm after a member of the security force who lived in the dorm smelled marijuana and alerted his flight chief. Staff Sergeant (SSgt) PO, one of the four investigators, brought Jager, his military working dog (MWD), on the sweep. Jager was certified to detect the presence and "residual odor" of five narcotics, including marijuana and cocaine, but like all Air Force MWDs, Jager was not specifically trained to alert on or search people.[1] It is undisputed that MWDs cannot detect the presence of narcotics in a person's body.

---

[1] Air Force regulations expressly state that "[d]etector dogs will never be used to search a person." Dep't of the Air Force, Instr. 131-121, Military Working Dog Program para. 4.2.2.1 (May 2, 2018). The parties dispute whether Jager's actions with respect to Appellee in this case qualified as a "search" under the regulations, an issue we need not decide to resolve this case.

The investigators began their sweep of the dorm by searching the common areas on each of the three floors of the building. Although SSgt PO testified that the smell of marijuana was noticeable as soon as the team entered the dorm, Jager did not alert to the presence of drugs (by sitting) in the common areas. After checking the common areas, the team moved to the dorm's hallways. Jager did not alert in the first-floor hallway, but he did alert when the team reached the second-floor hallway, where Appellee lived.

After Jager alerted to the presence of narcotics, a member of the team called the base judge advocate, who advised that there was no probable cause to search individual dorm rooms, but that the team could get consent from residents to perform such searches. The team then went door-to-door, searching only those dorm rooms where the resident was present and consented to the search. When Appellee exited his room, SSgt AM requested consent to search the room, which Appellee gave. When Jager walked past Appellee, the dog sat and stared at him, which signaled to Jager's handler that the dog was likely alerting to the presence of narcotics on Appellee. SSgt PO, Jager's handler, had never seen Jager, or either of the previous two dogs he had handled, alert on a person. SSgt PO testified that he was "pretty sure" Jager was alerting to Appellee, and it was likely either because Appellee had drugs in his possession or drug residue on his person.

After obtaining Appellee's consent, the investigators searched Appellee's person and backpack and found no drugs. The investigators and Jager also performed a consensual search of Appellee's room but found no evidence of narcotics. Upon exiting the room, Jager again sat and stared at Appellee when the investigators passed by Appellee in the hallway. The investigators finished their sweep of the dorm, during which Jager also alerted to the presence of narcotics in the hallway on the third floor.

After the dorm sweep, SSgt AM prepared an affidavit in support of a request for a search authorization to obtain a urine sample from Appellee. The affidavit included the following relevant statements in support of finding probable cause for a urinalysis test:

- SSgt AM (affiant) was a certified criminal investigator with over seven years of experience as a security force member.

- On April 3, 2018, the day of the sweep, a security force member reported a strong scent of marijuana on the second floor of the dorm.

- The MWD (Jager) did not alert to the presence of narcotics in the common areas or in the first floor hallways of the dorm.

- The MWD alerted to the presence of narcotics upon entrance to the second floor.

- Upon walking past Appellee, the MWD alerted to the presence of narcotics by sitting and staring at Appellee.

- The security force team did not find evidence of narcotics during a consensual search of Appellee's person and backpack.

- The MWD did not alert to the presence of narcotics during a consensual search of Appellee's room.

- The MWD again alerted to Appellee's person after completing the search of Appellee's room.

- The MWD alerted to the presence of narcotics upon entrance to the third floor, but not to any rooms or individuals on the third floor.

- The dorm building manager reported that Appellee had previously served time for drug related charges.

The affidavit also contained two statements that the military judge found to be factually incorrect: (1) that the MWD alerted to Appellee's room on three separate occasions, and (2) that the resident of a room on the third floor mentioned that she *first* smelled marijuana in the building on March 10, 2018, one day after Appellee moved into the dorm.

On April 5, 2018, a military magistrate granted authorization to seize and search Appellee's urine. The magistrate later testified before the military judge that he found sufficient probable cause based on "[t]he fact that the dog sat on [Appellee's] floor, and sat when [Appellee] came out, and sat each time it passed his room, and then on the [third] floor someone actually . . . said that the smell of marijuana started the day after he moved into the dorms." The subsequent urinalysis revealed cocaine in Appellee's system.

On May 23, 2018, Appellee was charged with one specification of wrongful use of cocaine in violation of Article 112a, UCMJ. Appellee filed a timely motion to suppress the urinalysis result due to lack of probable cause. In his motion to suppress and at the subsequent motions hearing, Appellee argued that the fact that Jager alerted on him "ultimately means nothing" because MWDs are not trained to search personnel and, in fact, are prohibited by Air Force regulations from doing so. Appellee also argued that there was no probable cause because, even if some significance was attributed to Jager's alerts on Appellee's person, there was no logical connection between the evidence collected by the investigators and the authorization to search Appellee's urine.

At the motions hearing, defense counsel further argued that the good faith exception should not apply because although Appellee was not alleging "improper conduct" by the investigators, SSgt AM's affidavit did not include a complete or "fair picture" of what happened during the search and included "some things . . . that are misleading." In addition to the errors noted above, defense counsel also pointed to the absence of any discussion in the affidavit about Jager's lack of specific training to search individuals or the fact that it was unusual for Jager to alert on a person. Defense counsel finished her argument by stating, "the affidavit was insufficient, I think that it just did not include all of the facts and circumstances of what actually occurred. It included, you know, I don't want to say false, but misleading information and just didn't include the full picture."

The military judge denied Appellee's motion to suppress, holding that five facts supported a finding of probable cause: (1) the second-floor hallway smelled like marijuana on March 31, 2018, three days before the search; (2) Appellee moved into the building on March 9, 2018; (3) a resident said the third floor smelled like marijuana a day after Appellee moved in; (4) the MWD alerted to the second-floor hallway; and (5) the MWD alerted to Appellee twice. The military judge excised the misstatement that Jager alerted to Appellee's door three times, but still found that probable cause existed even without the misstatement. The military judge also held that the good faith exception would apply even if probable cause were lacking because the magistrate had a substantial basis

for finding probable cause and the authorization was relied upon in good faith.

With the results of the urinalysis admitted into evidence, the military judge convicted Appellee, contrary to his pleas, of wrongful use of cocaine in violation of Article 112a, UCMJ, and sentenced him to sixty days confinement and a dishonorable discharge. The convening authority approved the findings and the sentence except the dishonorable discharge.

On appeal to the AFCCA, Appellee argued that the military judge erred by denying Appellee's motion to suppress the results of the urinalysis. The AFCCA agreed, holding that the magistrate lacked probable cause to believe that evidence of use would be found in Appellee's urine. *Hernandez*, 2020 CCA LEXIS 362, at \*32, 2020 WL 5988195, at \*10. The AFCCA also concluded that the good faith exception in Military Rule of Evidence (M.R.E.) 311(c)(3) did not apply because the affidavit supporting the search authorization was drafted "with a reckless disregard for the truth" and that "it was clear error for the military judge to conclude otherwise." *Id.* at \*45, 2020 WL 5988195, at \*13. Because Appellee's conviction was based solely on the results of the urinalysis, the AFCCA set aside the charge and sentence. *Id.* at \*47, 2020 WL 5988195, at \*14.

Pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2018), the TJAG certified two issues for review before this Court. First, whether Appellee waived his challenge to the application of the good faith exception on the basis that SSgt AM submitted his affidavit with knowing and intentional falsity or reckless disregard for the truth. And second, whether the military judge properly admitted the results of Appellee's urinalysis into evidence. Because we hold that the results of Appellee's urinalysis test were properly admitted into evidence under the good faith exception to the exclusionary rule, we decline to answer the first certified issue.[2] The decision of the AFCCA is reversed.

---

[2] The Government argues that Appellee waived any objection to the good faith exception in M.R.E. 311(c)(3) because trial defense counsel: (1) did not mention the good faith exception in her written suppression motion; (2) expressly disavowed any "improper conduct" on the part of the investigators; and (3) declined to characterize any of the investigator's statements specifically as

**II. Discussion**

In the second certified issue, the Government asks us to determine whether the military judge committed reversible error when he denied Appellee's motion to suppress the results of his urinalysis test, thereby allowing those results to be admitted into evidence. This Court reviews a military judge's denial of a motion to suppress evidence for an abuse of discretion. *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016). An abuse of discretion occurs when a military judge's decision is based on clearly erroneous findings of fact or incorrect conclusions of law. *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017). As we reiterated in *United States v. Blackburn*, when this Court reviews a lower court's holding on the ruling of a trial court, we "typically have pierced through [the] intermediate level and examined the military judge's ruling, then decided whether the Court of Criminal Appeals was right or wrong." 80 M.J. 205, 211 (C.A.A.F. 2020) (internal quotation marks omitted) (quoting *United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006)). "In reviewing a ruling on a motion to suppress, the evidence is considered in the light most favorable to the party that prevailed on the motion," *id.*, which in this case is the Government.

The Government asserts two primary reasons why it believes that the AFCCA wrongly concluded that the military judge erred when he denied Appellee's motion to suppress. First, the Government argues that the magistrate had a substantial basis for finding probable cause to search Appellee's urine. Second, even if probable cause was lacking, the Government argues that the military judge did not abuse his discretion when he concluded that the good faith exception should apply. We consider each of these arguments in turn.

---

"false." Although this Court typically addresses waiver before reaching the merits of an issue, we do not believe that this order of analysis is required, *see, e.g.*, *Loving v. Hart*, 47 M.J. 438, 445 (C.A.A.F. 1998) (declining to decide whether the appellant waived an objection to instructions and instead deciding that the instructions were not in error), and decline to do so here.

### A. Probable Cause

We review a military magistrate's finding of probable cause for the issuance of a warrant based on whether the magistrate had a "substantial basis for concluding that probable cause existed." *United States v. Rodgers*, 67 M.J. 162, 164–65 (C.A.A.F. 2009). This review is conducted with "great deference" to the magistrate's finding of probable cause because of the "Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks omitted) (citations omitted); *see also Massachusetts v. Upton*, 466 U.S. 727, 733 (1984) ("[A] deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."). If the law enforcement affidavit on which the magistrate relied included incorrect information, this Court has suggested that a reviewing court should "sever [that information] from the affidavit and examine the remainder to determine if probable cause still exists." *United States v. Cowgill*, 68 M.J. 388, 391 (C.A.A.F. 2010) (internal quotation marks omitted) (quoting *United States v. Gallo*, 55 M.J. 418, 421 (C.A.A.F. 2001)).[3] If an important fact is omitted from the affidavit, for a court to find that probable cause did not exist, that fact "must do more than potentially affect the probable cause determination: it must be 'necessary to the finding of probable cause.' " *United States v. Garcia*, 80 M.J. 379, 388 (C.A.A.F. 2020) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

The Fourth Amendment guarantees servicemembers' right to "be secure in their persons, houses, papers, and

---

[3] The Government argues that this approach is legal error because it goes beyond what the Supreme Court has required. In *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), the Supreme Court held that false information that was knowingly or recklessly included in an affidavit should be excised by a reviewing court determining whether probable cause existed, but did not address how false information that was included due to negligence should be treated. This Court noted this discrepancy in *Cowgill*, 68 M.J. at 392, but declined to resolve the issue because it was not necessary to the outcome of that case. Similarly, because we are not deciding whether probable cause existed to search Appellee's urine, we need not address the Government's argument here.

effects." U.S. Const. amend. IV. It protects against unreasonable searches and seizures and requires warrants to be issued only if based upon probable cause. *Id.* The Fourth Amendment's protections apply when a person has a reasonable expectation of privacy, *United States v. Jones*, 565 U.S. 400, 406 (2012), and this Court has held that servicemembers have such an expectation in the contents of their urine—both as to the initial seizure of the urine and the results of a urinalysis test. *United States v. Dease*, 71 M.J. 116, 120–21 (C.A.A.F. 2012). The President has incorporated the protections of the Fourth Amendment directly into the Military Rules of Evidence in M.R.E. 311 through M.R.E. 317. *Hoffmann*, 75 M.J. at 123.

Consistent with the Fourth Amendment, M.R.E. 315(f)(1) mandates that all search authorizations must be based on probable cause. Probable cause exists if there is a "reasonable belief that the property or evidence [to be searched] is . . . evidence of a crime." M.R.E. 316(c)(1). Probable cause for issuing a search authorization exists when there is enough information for the authorizing official to have "a reasonable belief that the person . . . or evidence sought is located in the place or on the person to be searched." M.R.E. 315(f)(2).

In deciding whether there was a substantial basis for probable cause, the magistrate looks to the totality of the circumstances. *Gates*, 462 U.S. at 238. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that . . . evidence of a crime will be found in a particular place." *Id.* (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)). A finding of probable cause "does not require officers to rule out a suspect's innocent explanations for suspicious facts." *D.C. v. Wesby*, 138 S. Ct. 577, 588 (2018). Instead, it "merely requires that a person 'of reasonable caution' could believe that the search may reveal some evidence of a crime; *it does not demand any showing that such a belief be correct or more likely true than false.*'" *United States v. Bethea*, 61 M.J. 184, 187 (C.A.A.F. 2005) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). When deciding whether probable cause exists "[t]he authorizing official is free to draw 'reasonable inferences' from the material supplied by those applying for the authority

to search." *Hoffman*, 75 M.J. at 125 (quoting *Gates*, 462 U.S. at 240). But, as a threshold matter, for there to be probable cause, "a sufficient nexus must be shown to exist between the alleged crime and the specific item to be seized." *United States v. Nieto*, 76 M.J. 101, 106 (C.A.A.F. 2017); s*ee Warden v. Hayden*, 387 U.S. 294, 307 (1967) (requiring a "nexus . . . between the item to be seized and criminal behavior").

Here, even viewed in the light most favorable to the Government, it is unclear that probable cause existed for a search of Appellee's urine. The Government argues that the magistrate had a substantial basis to find probable cause for a search of Appellee's urine because: (1) Jager alerted to Appellee's person twice; (2) individuals smelled drugs in the building after Appellee moved in; (3) there was evidence that *someone on the second floor* had used drugs based on the "strong odor of marijuana" recently noticed on the floor; and (4) the magistrate was aware that Appellee had a prior drug charge. Accordingly, the Government argues, probable cause existed even though no drugs were found on Appellee's person, in his dorm room, or in his backpack. Even after severing the incorrect statements from the supporting affidavit and accounting for the omitted facts, the Government argues that probable cause still existed because under the totality of the circumstances, there was a "*very good* chance" a urinalysis test would produce evidence of a crime. Essentially, the Government argues that it was *reasonable* for the magistrate to believe that a urinalysis test might return evidence of drug use given that Jager's alerts suggested that Appellee had recently been in physical contact with drugs, Appellee had recently been convicted for using drugs, and Appellee resided in a dorm where there was ongoing evidence of drug use including a strong smell of marijuana on Appellee's floor on the day of the search. *See United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007) (noting that probable cause requires "more than bare suspicion, but something less than a preponderance of the evidence").

However, as Appellee correctly notes, this Court has rigorously enforced the "nexus" component of the probable cause inquiry in previous cases. *See, e.g.*, *Nieto*, 76 M.J. at 106–08 (finding no probable cause because the nexus requirement was not satisfied). In *Nieto*, the Court noted

"that law enforcement officials must provide *specific and particular* information in order for a magistrate to determine that there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 108 n.5 (quoting *United States v. Clayton*, 68 M.J. 419, 424 (C.A.A.F. 2010)). In that case, the Court found no probable cause to search the appellant's laptop when the specific evidence presented to the magistrate only suggested that the suspected evidence of the alleged crime—electronic photographs surreptitiously taken in the latrine—would be found on the appellant's cell phone. *Id.* at 107–08. Because the law enforcement officials only provided a generalized profile about what servicemembers normally do with electronic photographs on their cell phones, rather than any specific and particular information about how or why the photographs might have been transferred from the cell phone to the seized laptop, the Court concluded that there was no substantial basis for the magistrate to believe that the photographs would be present on the appellant's laptop. *Id.* at 108.

The specific nexus between the evidence presented in this case and the existence of narcotics in Appellee's urine is not obvious. We do not doubt that based on Jager's alerts, the evidence of ongoing drug use on Appellee's floor of the dorm, and Appellee's prior conviction for a drug offense, the magistrate had a substantial basis to believe that Appellee recently had been *in contact* with narcotics.[4] What is less clear, however, is whether the magistrate had a substantial basis to believe that Appellee had *used* those narcotics such that evidence of that use would be present in his urine. Although that is one possibility, it is also possible that Appellee was transporting, manufacturing, handling, or distributing the narcotics without using them. The Government argues that the fact that the consensual searches of Appellee's person, dorm room, and personal effects revealed no evidence of any crime strongly

---

[4] With respect to the last of these points, the Supreme Court has held that although character evidence is not sufficient by itself to establish probable cause, character evidence is also not "entirely irrelevant." *Beck v. Ohio*, 379 U.S. 89, 97 (1964); *see also United States v. Stuckey,* 10 M.J. 347, 363 (C.M.A. 1981) (listing "reputation, prior convictions, or nonjudicial punishments" as "information that is relevant to a determination of probable cause").

suggests that Appellee must have used the drugs, rather than any of the other possibilities. Appellee argues that the lack of any other evidence of the presence of drugs cuts the other way, undermining any inferences that might be drawn from Jager's alerts to Appellee.

In the end, even accounting for the "great deference" owed to the magistrate and the "Fourth Amendment's strong preference for searches conducted pursuant to a warrant," *Gates*, 462 U.S. at 236, the facts of this case present a close question as to whether probable cause existed to search Appellee's urine. Solely for the purpose of resolving this case, we presume—without deciding—that probable cause did not exist and proceed to consider whether the good faith exception to the exclusionary rule applies.

### B. The Good Faith Exception

Under M.R.E. 311(a), evidence seized pursuant to a search warrant issued without probable cause must be excluded unless an exception applies. *United States v. Perkins*, 78 M.J. 381, 386 (C.A.A.F. 2019). Under the "good faith" exception to the exclusionary rule, evidence obtained pursuant to a search warrant that was ultimately found to be invalid should not be suppressed if it was gathered by law enforcement officials acting in reasonable reliance on a warrant issued by a neutral and detached magistrate. *United States v. Leon*, 468 U.S. 897, 918 (1984). The Supreme Court has advised that the "good faith" exception is unavailable when any of the following four circumstances are present: (1) the authorizing official was given incorrect information that was either known to be "false or would have [been] known [to be] false except for . . . reckless disregard of the truth"; (2) the magistrate acted as a "rubber stamp" and thus, abandoned his judicial role; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was facially deficient. *Id*. at 914, 923–24 (internal quotation marks omitted) (citations omitted).

The President incorporated the Supreme Court's guidance about the good faith exception into M.R.E. 311(c)(3). *See United States v. Carter*, 54 M.J. 414, 420 (C.A.A.F. 2001) (citing *Manual for Courts-Martial, United States,* Analysis of the

Military Rules of Evidence app. 22 at A22-18 (1995 ed.)).[5] In so doing, however, the President elected to take the opposite approach from *Leon*, establishing three requirements that must all be satisfied for the good faith exception to apply instead of specifying when the exception does not apply. As relevant to the facts of this case, for the good faith exception to apply, M.R.E. 311(c)(3) requires: (1) that the magistrate who issued the search authorization was competent to do so; (2) that the magistrate who issued the search authorization had a "substantial basis for determining the existence of probable cause";[6] and (3) that the investigators "seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant."

Despite their different approaches and although the text of the four *Leon* factors and the three M.R.E. 311(c)(3) requirements do not align perfectly, this Court found no evidence that the President intended to promulgate a more stringent rule for the application of the good faith exception in the military. *Carter*, 54 M.J. at 421. This Court therefore construed M.R.E. 311(c)(3) in a manner consistent with the Supreme Court's decision in *Leon*. *Id.* The Court explained that M.R.E. 311(c)(3)(B) "addresses the first and third exceptions noted in *Leon*, *i.e.*, the affidavit must not be intentionally or

---

[5] In *Carter*, the Court cited and discussed a prior version of the rule when the good faith exception was incorporated as M.R.E. 311(b)(3). The good faith exception is now incorporated as M.R.E. 311(c)(3).

[6] In *Perkins*, we held that this requirement is met when the individual executing the search "had an objectively reasonable belief that the magistrate had a 'substantial basis' for determining the existence of probable cause." 78 M.J. at 387 (quoting *Carter*, 54 M.J. at 422). This is not the most obvious interpretation of the text of M.R.E. 311(c)(3)(B). But as this Court explained in *Perkins* and *Carter*, this interpretation of M.R.E. 311(c)(3)(B) is necessary to distinguish this prong of the good faith exception provision from the test for probable cause. *See Perkins*, 78 M.J. at 387 (explaining that the plain text of M.R.E. 311(c)(3)(B) suggests that the good faith exception only applies when there is also probable cause to search); *Carter*, 54 M.J. at 421–22 (same). If the Court were to give M.R.E. 311(c)(3)(B) its literal meaning, "the good-faith exception would not be an exception at all, and the language would serve no purpose." *Carter*, 54 M.J. at 421.

recklessly false, and it must be more than a 'bare bones' recital of conclusions." *Id*. The Court further explained that M.R.E. 311(c)(3)(C) "addresses the second and fourth exceptions in *Leon*, *i.e.*, objective good faith cannot exist when the police know that the magistrate merely 'rubber stamped' their request, or when the warrant is facially defective." *Id*.

Before the AFCCA and again before this Court, Appellee argues that it was clear error for the military judge to conclude that the good faith exception applied because SSgt AM drafted his affidavit with a "reckless disregard for the truth." In light of how this Court has construed M.R.E. 311(c)(3), we understand Appellee to be arguing that the good faith exception is not applicable in this case because the second prong of the rule—M.R.E. 311(c)(3)(B)—has not been satisfied. Although we acknowledge that the significant deficiencies in SSgt AM's affidavit present a close question, we cannot agree that those deficiencies—standing alone without any other evidence of bad faith—establish a "substantial preliminary showing that a government agent included a false statement knowingly and intentionally or with reckless disregard for the truth." M.R.E. 311(d)(4)(B).

In this case, the military judge determined that "the information in the [search] authorization [application] was not false or reckless." This determination is a finding of fact that we may review only for clear error. *See, e.g.*, *Blackburn*, 80 M.J. at 211 (treating as a finding of fact the military judge's determination that an investigator did not intentionally or recklessly provide false information in an application for a search authorization); *United States v. Mason*, 59 M.J. 416, 422 (C.A.A.F. 2004) (treating as a finding of fact the military judge's determination that an investigator did not intentionally or recklessly omit relevant information act). "A finding of fact is clearly erroneous when there is no evidence to support the finding, . . . or when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018) (internal quotation marks omitted) (citations omitted). In contrast to the AFCCA, we conclude that the military judge's finding was not clearly erroneous.

"Allegations of negligence or innocent mistake are insufficient" to hold that an affidavit was drafted with a reckless disregard for the truth. *Cowgill*, 68 M.J. at 391 (internal quotation marks omitted) (quoting *Franks*, 438 U.S. at 171). In this case, SSgt AM's alleged recklessness was the inclusion of an incorrect statement—that the MWD alerted to Appellee's door three times during the sweep—and the omission of two things: (1) the fact that marijuana was smelled in the dorm on occasions before Appellee moved in, not just the day after he arrived; and (2) an explanation that Jager was not trained or permitted to search people. During the motions hearing prior to trial, defense counsel raised these deficiencies before the military judge. Nevertheless, the military judge still concluded that SSgt AM did not include information in the authorization that was false or reckless and thus the good faith exception to the exclusionary rule applied. Reviewing the military judge's decision in the light most favorable to the Government, we cannot say that the military judge abused his discretion when he reached this conclusion for three reasons.

First, other than the errors and omissions in the affidavit itself (the significance of which were strongly disputed by the Government), the record does not include any evidence of recklessness by SSgt AM or the other investigators. To the contrary, the investigators' actions during the drug sweep support the Government's claim that they acted in good faith. The drug sweep of the dorm occurred only after a security force member reported the smell of marijuana in the building. During the sweep, the team consulted with the base judge advocate to see if probable cause existed for more invasive searches. When the base judge advocate said the investigators had not established probable cause, the team sought and obtained consent before searching any dorm rooms. After the sweep, SSgt AM drafted an affidavit that included both facts in favor of finding probable cause and facts that cut against such a finding. For example, SSgt AM included the fact that Jager alerted on a separate floor. The inclusion of correct facts that could dissuade a magistrate from finding probable cause is the type of evidence that leads us to believe the incorrectly included statements and omissions were a result of negligence rather than a reckless disregard for the truth.

Second, the military judge "found credible the testimony of [SSgt AM]," despite the military judge's recognition that SSgt AM made "misstatements" in his affidavit. Credibility determinations are "entitled to great deference on appeal and will not be reversed absent a clear abuse of discretion." *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A. 1987); *see also United States v. Rodriguez,* 414 F.3d 837, 845 (8th Cir. 2005) ("[C]redibility is a determination for the trier-of-fact, and its assessment is virtually unassailable on appeal."). The military judge could reasonably have concluded that SSgt AM was not reckless when preparing his affidavit based on the investigator's demeanor during his testimony.

Third, and most importantly, Appellee's argument that SSgt AM drafted his affidavit with a "reckless disregard for the truth" is significantly undermined by defense counsel's statements before the military judge. At the hearing on Appellee's motion to suppress, defense counsel expressly stated that she was not alleging "improper conduct" by SSgt AM. Because the Appellee carried the burden of making "a substantial preliminary showing" that SSgt AM included a false statement with reckless disregard for the truth in the information presented to the magistrate, *see* M.R.E. 311(d)(4)(B), it is difficult to imagine how Appellee could have made such a showing while disclaiming any "improper conduct" by the author of the affidavit. In our view, submitting an affidavit with reckless disregard for the truth would qualify as "improper conduct" for a law enforcement official under any reasonable definition of that phrase.[7]

Suppression of evidence gathered pursuant to a warrant is a "last resort, not our first impulse." *Herring v. United States*, 555 U.S. 135, 140 (2009) (internal quotation marks omitted) (citation omitted). Moreover, "[t]he fact that a neutral magistrate has issued a warrant is the clearest indication

---

[7] Defense counsel's statement that Appellee was not alleging "improper conduct" forms the crux of the Government's argument that Appellee affirmatively waived any challenge to the search authorization for his urine on the basis of knowing and intentional falsity or reckless disregard for the truth. Again, we need not—and do not—decide whether Appellee waived this challenge because we conclude that the military judge did not abuse his discretion when he concluded that the good faith exception applied.

that the officers acted in an objectively reasonable manner or . . . in objective good faith." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted) (citation omitted). In this case, the magistrate found that there was probable cause to conduct the search. The military judge reviewed this finding, applied the proper law, and came to the same conclusion while also explaining why the good faith exception would apply regardless of whether probable cause existed. Although we cannot say that we would have necessarily reached the same conclusions, we also cannot say that the military judge abused his discretion, especially given that Appellee specifically disclaimed any "improper conduct" by the relevant government official. We therefore conclude that, whether or not probable cause existed to search Appellee's urine, the military judge properly admitted the results of Appellee's urinalysis into evidence under the good faith exception to the exclusionary rule.

### III. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for further proceedings under Article 66, UCMJ, 10 U.S.C. § 866 (2018).