UNITED STATES, Appellee

v.

Scott M. DEASE Jr., Airman First Class
U.S. Air Force, Appellant

No. 12-6001

Crim. App. Misc. Dkt. No. 2011-04

United States Court of Appeals for the Armed Forces

Argued January 10, 2012

Decided May 1, 2012

BAKER, C.J., delivered the opinion of the Court, in which STUCKY and
RYAN, JJ., and COX, S.J., joined.  ERDMANN, J., filed a separate
opinion concurring in the result.


<u>Counsel</u>

For Appellant:  Captain <u>Nathan A. White</u> (argued).

For Appellee:  Captain <u>Joseph J. Kubler</u> (argued); <u>Colonel Don M.
Christensen</u>, <u>Lieutenant Colonel Linell A. Letendre</u>, and <u>Gerald
R. Bruce</u>, Esq.

Military Judge:  Jefferson B. Brown


<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**</u>.

Chief Judge BAKER delivered the opinion of the Court.

Appellant brings this interlocutory appeal from a United States Air Force Court of Criminal Appeals (CCA) ruling in favor of the Government concerning the admissibility of evidence in a urinalysis case. Appellant consented to a urinalysis, but withdrew his consent to search six days later, when the urine sample was in Government custody but had not yet been tested. Approximately one month later, Appellant's urine sample was sent to the Brooks City-Base laboratory where it tested positive for cocaine use. At trial, the military judge excluded all evidence from Appellant's urinalysis as an unlawful search under the Fourth Amendment, Appellant having withdrawn his consent pursuant to Military Rule of Evidence (M.R.E.) 314(e)(3). The military judge further ruled that all of the evidence derived from Appellant's subsequent statement and the search of his room was also excluded.

The Government appealed under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2006), and the CCA held that the original consent to the urinalysis was tantamount to abandonment, and that the subsequent search of the urine sample was therefore reasonable. United States v. Dease, Misc. Dkt. No. 2011-04, 2011 CCA LEXIS 317, at *10 (A.F. Ct. Crim. App. Sept. 29, 2011). The military judge's ruling concerning

the admissibility of the evidence resulting from the urinalysis and subsequent investigation was reversed, and the case was remanded to the military judge for trial. Appellant petitioned this Court, and we granted review on the following issue:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY FINDING APPELLANT HAD ABANDONED HIS URINE AND HAD NO REASONABLE EXPECTATION OF PRIVACY WHERE APPELLANT CONSENTED TO THE SEIZURE OF HIS URINE AND THEN REVOKED CONSENT PRIOR TO THE SEARCH OF APPELLANT'S URINE.

For the reasons set forth below, we hold that the military judge did not abuse his discretion in ruling that Appellant had a privacy interest in his urine sample and could withdraw consent prior to the search. Further, the military judge did not abuse his discretion in concluding that the urinalysis evidence and evidence derived from that urinalysis would not have been subject to inevitable discovery. Seizure and search are not necessarily coterminous, particularly in the context of a urinalysis case. M.R.E. 314(e)(3) states that "[c]onsent may be limited in any way by the person granting consent, including limitations in terms of time, place, or property and may be withdrawn at any time." (Emphasis added.) Therefore, the lower court erred in determining that Appellant's privacy interest in his urinalysis sample was extinguished by his voluntary surrender of his urine to the Government, without addressing M.R.E. 314(e)(3).

Accordingly, we reverse the decision of the CCA, and affirm the ruling of the military judge.

BACKGROUND[1]

Appellant, an E-3 in the Air Force Security Forces, was recruited by the Air Force Office of Special Investigations (OSI) as a confidential source (CS) on May 21, 2010. The military judge found that Appellant "was a 'clean' CS with no known criminal activity." "Because [Appellant] was 'clean,' had a security forces background, and had a pre-existing relationship with [the] TARGET" of an ongoing investigation of narcotics trafficking on Royal Air Force (RAF) Lakenheath and RAF Mildenhall, OSI was eager to use him as a CS against the target. On several occasions between May 21, 2010, and June 14, 2010, Appellant met with a Special Agent (SA) Slysz from OSI to discuss his responsibilities as a CS and to test his potential as an undercover agent. Those responsibilities included, among other things, a duty to keep SA Slysz informed of his interactions with the target while serving as a CS.

On June 15, 2010, the target asked Appellant to pick up a United Kingdom (UK) national by the name of Daniel Clements from Mildenhall. Appellant did so without informing SA Slysz. That same day the Suffolk Constabulary contacted the desk at RAF

---

[1] The facts are drawn from the military judge's detailed findings of fact, which the CCA did not find clearly erroneous.

Lakenheath, to notify base officials that Appellant's vehicle "was observed by a British CCTV system that was set up in a district known for narcotic activity. An unidentified passenger in the vehicle was witnessed exiting the vehicle, appeared to make a drug transaction, and then returned to the vehicle." Acting on the information provided by the Suffolk Constabulary, a "be on the look out" alert was issued and the security forces stopped Appellant on behalf of the local authorities as he and his passenger, Mr. Clements, were entering RAF Lakenheath.

Local constables searched Appellant's vehicle, as well as Appellant and Clements, but found no evidence of illegal drug use. The military judge specifically found that:

> Constable O'Brien and Constable Meddings searched the vehicle and both occupants. No evidence of illegal drug use was discovered during the searches. Neither constable noticed anything about their demeanor that suggested to them that [Appellant] or Mr. Clements were under the influence of narcotics. At some point, an Air Force military working dog walked around the vehicle and did not alert for drugs within the vehicle.

A decorative pipe was found inside the vehicle, but there was no evidence of its use in the consumption of illegal drugs, and the pipe was of a type that was available in deployed locations, and frequently purchased as a souvenir. The constables on the scene, feeling they did not have enough

evidence to charge the British national with a crime, drove him home and did not pursue further investigation.

Following the search of the vehicle and the release of Clements, Master Sergeant (MSgt) Ortega-Llarena questioned Appellant after first informing him of his Article 31, UCMJ,[2] rights, which he waived.  Appellant explained that he was working as a CS for OSI, and that his activity with the British national, which had included the purchase of narcotics, had been in furtherance of his duties with OSI.  Asked to corroborate this story, Appellant telephoned his handler, SA Slysz.  SA Slysz was unwilling to confirm that Appellant was a CS, but nonetheless led MSgt Ortega-Llarena to believe that there was a law enforcement relationship between the two.  Appellant consented to both a urinalysis and a search of his dormitory room.  The search of his room yielded no evidence of drug use, and his urine sample was taken and placed in storage, pending shipment to the Air Force Drug Testing Laboratory at Brooks-City Base, Texas.

Appellant was subsequently released, and no further investigation occurred.  MSgt Ortega-Llarena, who was in charge of the investigation, stated at trial that, had the results of

---

[2] 10 U.S.C. § 831 (2006).

the urinalysis come back negative for drug use, he would have closed the investigation.

Six days later, on June 21, 2010, Appellant signed a notice of representation, stating that he was being represented by Captain (Capt) Joshua Goins, Area Defense Counsel (ADC), RAF Lakenheath, UK.  This memorandum also stated:

> I request that you not interview, interrogate, or question me and that you not ask me to make any statements, oral or written, unless and until you have contacted my attorney and he has given express written consent thereto.  Furthermore, any prior consent for search, samples or any other procedure is hereby withdrawn.

Emphasis added.

Capt Goins e-mailed this memorandum to the RAF Lakenheath Chief of Military Justice, the 48th SFS Commander, the 48th SFS First Sergeant, MSgt Ortega-Llarena, and the local OSI office. On July 26, Appellant's urine sample was shipped to Brooks laboratory and tested positive for the metabolite for cocaine. On August 11, 2010, MSgt Ortega-Llarena received notification of the results, and scheduled an interview with Appellant.  At 3:00 p.m. on August 26, 2010, MSgt Ortega-Llarena read Appellant his Article 31, UCMJ, rights for suspicion of wrongful possession and use of a controlled substance, and for making a false official statement.  Appellant first stated that he wished to speak to his counsel before speaking to the investigators.

7

However, after several unsuccessful attempts to contact his defense counsel, Appellant indicated that he wished to make a statement. He again denied making an earlier false statement. He also consented to another urinalysis, as well as a search of his dormitory room.

That same day, SFOI searched Appellant's dormitory room, discovering a packet of "Pulse Ultra," a Spice[3] derivative, as well as an aluminum can that appeared to have been modified for use as a smoking device, and which had residue of a green, organic substance. When confronted with this evidence, Appellant made a subsequent statement admitting to cocaine use and Spice possession and use over the course of a year, as well as confessing to making an earlier false statement.

At trial, Appellant moved for exclusion of all of the evidence stemming from both his urinalysis and from the investigation subsequent to SFOI receipt of the results of his urinalysis, arguing that his revocation of consent made the urinalysis an illegal search, and that the rest of the evidence was tainted by this illegal search.

---

[3] "Spice" is a brand name for a synthetic cannabinoid, which has largely become a generic term to describe any synthetic cannabis. It is a Schedule I controlled substance under United States federal law, as of March 1, 2011. Schedules of Controlled Substances, 70 Fed. Reg. 11,075, 11,077, (Mar. 1, 2011) (codified at 21 C.F.R. pt. 1308.11).

As noted above, the military judge heard arguments on the motion, and ruled in Appellant's favor based on M.R.E. 314. The Government appealed and the CCA reversed the military judge, bringing Appellant before this Court under Article 67, UCMJ.[4]

ANALYSIS

We review a military judge's evidentiary ruling on a motion to suppress for an abuse of discretion. United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995); see also United States v. Wuterich, 67 M.J. 63, 77 (C.A.A.F. 2008) (applying the abuse of discretion standard in an Article 62, UCMJ, appeal from an evidentiary ruling). There are three such rulings at issue in this case. We consider each in turn.

1. Abandonment and Consent

The first question presented is whether the military judge abused his discretion in concluding that Appellant retained an ongoing privacy interest in his urine sample after it was seized and before it was searched at the Brooks lab and therefore whether Appellant could assert this privacy interest by withdrawing his consent to search under M.R.E. 314. The underlying question, and the question on which the military judge and the lower court split, concerns the application of M.R.E. 314(e)(3). Should the rule inform one's judgment

---

[4] 10 U.S.C. § 867 (2006).

regarding Appellant's reasonable expectation of privacy in a urine sample that is voluntarily given, and, if so, does this same rule permit revocation of that consent? The military judge's ruling was predicated on the rule; the lower court did not reference it.

M.R.E. 314(e)(3) states that "Consent may be limited in any way by the person granting consent, including limitations in terms of time, place, or property and may be withdrawn at any time." In our view, the language is plain. "Consent . . . may be withdrawn at any time," provided of course that the search has not already been conducted. Moreover, as recognized in Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989), and United States v. Wallace, 66 M.J. 5, 8 (C.A.A.F. 2008), searches and seizures are not necessarily coterminous; often they are not. In this case, Appellant's urine was seized on June 15, 2010, but it was not searched until the end of July. Therefore the military judge did not abuse his discretion in concluding that consent to search could be withdrawn on June 21, 2010.

The CCA erred in concluding that "[l]ike delivering garbage to the curb, the appell[ant] voluntarily abandoned any reasonable expectation of privacy in his waste urine when he delivered it to the government for analysis," basing its

10

analysis on the concept that consent equals abandonment under California v. Greenwood, 486 U.S. 35, 39-40 (1988). Dease, 2011 CCA LEXIS 317, at *10. The facts in Greenwood differ from the facts before this Court in two important ways. First, the defendants in Greenwood left their trash on the side of the road, "having deposited their garbage 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it.'" 468 U.S. at 40-41 (quoting United States v. Reicherter, 647 F.2d 397, 399 (3d Cir. 1981)). Conversely, as the CCA noted, the military judge, in his ruling, held that an individual consenting to a urinalysis has "a reasonable expectation that the government will properly secure his sample and prevent unauthorized access, tampering, or testing of that sample." Dease, 2011 CCA LEXIS 317, at *8 (quotation marks omitted).

Second, while the urine itself may be of negligible intrinsic value to either Appellant or the Government, Appellant retains a privacy interest in the sample, due to its nature and its evidentiary value. Skinner, 489 U.S. at 616. Unlike contraband, the evidentiary value of which is ascertainable to the naked eye, the evidentiary value of the urine sample is only ascertainable after chemical analysis. The United States

Supreme Court recognized this aspect of the nature of bodily fluid samples in Skinner (holding that there are two separate privacy interests at stake in the procurement and subsequent testing of bodily fluids).  Id.  The evidentiary nature of the urine or blood sample is akin to that of a computer hard drive, whose evidentiary value is unknown until it is examined by forensic experts.  This Court held in Wallace that, like the blood samples in Skinner, the seizure and search of a computer hard drive constitutes two separate and distinct intrusions into privacy interests.  Wallace, 66 M.J. at 8 (citing Skinner, 489 U.S. at 616, and analogizing the computer hard drive to bodily fluids).

Finally, M.R.E. 314(e)(3), by codifying a right to revoke consent, when viewed in light of the separate privacy interests laid out by the United States Supreme Court in Skinner, implies a continued privacy interest maintained by Appellant in the untested urine sample.[5]  As noted by the military judge in his ruling, the M.R.E., by allowing the withdrawal of consent, is

---

[5] While the Supreme Court has not specifically ruled on the question of whether there is a continuation of a Fourth Amendment privacy interest, most of the federal courts of appeals have held that consent to search may be revoked if the person giving consent effectively withdraws the consent prior to the completion of the search.  See, e.g., United States v. Fuentes, 105 F.3d 487, 489 (9th Cir. 1997); United States v. Ho, 94 F.3d 932, 934 (5th Cir. 1996); United States v. Carter, 985 F.2d 1095, 1097 (D.C. Cir. 1993); Warrantless Searches and Seizures, 37 Geo. L. J. Ann. Rev. Crim. Proc. 39, 96 (2008).

not intended to allow a servicemember to reclaim abandoned property, but rather to protect a privacy interest.

In this case, abandonment and consent represent two separate and distinct legal principles. Appellant did not abandon his urine, only to have it later collected and tested; he consented to the search of his urine for evidence of drug use, and later withdrew that consent.

2. Inevitable Discovery

Having found that the military judge did not abuse his discretion in determining that Appellant withdrew his consent to search, the next question we must address is whether he abused his discretion in ruling that the doctrine of inevitable discovery should not apply. United States v. Kaliski, 37 M.J. 105, 109 (C.M.A. 1993) (citing United States v. Terzado-Madruga, 897 F.2d 1099, 1112 (11th Cir. 1990)). In order to find an abuse of discretion, we must find that the military judge committed a clear error in his conclusions. United States v. Houser, 36 M.J. 392, 397 (C.M.A. 1993).

The doctrine of inevitable discovery is an exception to the exclusionary rule of the Fourth Amendment. Nix v. Williams, 467 U.S. 431, 444 (1984). M.R.E. 311(b)(2) codifies this doctrine, stating that "Evidence that was obtained as a result of an unlawful search or seizure may be used when the evidence would

13

have been obtained even if such unlawful search or seizure had not been made."

The military judge concluded that "[t]his was not a situation where SFOI possessed or were actively pursuing evidence or leads that would inevitably have led to the discovery of the evidence." Next, the military judge concluded that there was no probable cause to search the urine collected on June 15, or, in other words, to perform a urinalysis without Appellant's consent:

> There is nothing to suggest that the probable cause, if there was any, would extend beyond the vehicle to A1C Dease's urine. When one factors in that A1C Dease had a plausible explanation as to why he was near a potential drug transaction and use of drug, the evidence was insufficient to support a probable cause search of the accused's urine.

Finally, the military judge concluded that "the government failed to meet their burden of showing the degree of certainty required by the law to find that the lawful search of A1C Dease's urine would have been inevitable."

The record indicates that the military judge relied upon multiple sources of evidence in coming to the conclusion that there was no probable cause, and, even if there were probable cause, no independent attempt to pursue an investigation that would have led to the application to a magistrate for a warrant. Absent probable cause to suspect the evidence of illegal drug

14

use in Appellant's urine, there could be no application of the

doctrine of inevitable discovery in this case.  Wallace, 66 M.J.

at 10 (citing United States v. Owens, 51 M.J. 204, 210 (C.A.A.F.

1999) (upholding the legality of a warrantless search because of

overwhelming probable cause plus the likelihood that routine

police procedure would have made discovery of the evidence

inevitable)); United States v. Kozak, 12 M.J. 389, 394 (C.M.A.

1982).

> [A]fter an accused challenges the legality of a
> search, the prosecution must, by a preponderance of
> the evidence, establish to the satisfaction of the
> military judge that when the illegality occurred, the
> government agents possessed, or were actively
> pursuing, evidence or leads that would have inevitably
> led to the discovery of the evidence and that the
> evidence would inevitably have been discovered in a
> lawful manner had not the illegality occurred.

Kozak, 12 M.J. at 394.

The military judge's finding of fact that there was no

probable cause, nor any parallel investigation that would lead

to discovery of the evidence, is not clearly erroneous.  At no

point was the Government conducting a parallel investigation.

Further, given Appellant's role as a "clean" CS, the military

judge did not abuse his discretion in concluding that the

Government had not met its burden of showing probable cause on

the basis of the CCTV video alone, showing Appellant and his

vehicle in an area of known narcotics trafficking accompanied by

15

a stranger who appeared to purchase narcotics. Therefore we uphold the military judge's ruling that the evidence obtained through the analysis of Appellant's urine must be excluded.

3. Derivative Evidence

Finally, we turn to the military judge's ruling on derivative evidence. Having determined that the doctrine of inevitable discovery did not apply to the urinalysis evidence, the military judge excluded the evidence stemming from Appellant's August 26, 2010, interview and the search of his dormitory on the same date. Again, we examine the military judge's decision for an abuse of discretion. Kaliski, 37 M.J. at 109. Appellant consented to the search of his dormitory room and willingly gave a statement on August 26, 2010, after MSgt Ortega-Llarena informed him of the results of his urinalysis. However, the military judge determined that Appellant's consent on August 26, 2010, was not sufficiently attenuated from the prior unlawful search of Appellant's urine. Specifically, the military judge concluded "that the 26 August 2010 confession and the results of the 26 August 2010 search of [Appellant's] dormitory room are derivative evidence of the improper search of the accused's urine and should be suppressed."

"[G]ranting of consent to search may sufficiently attenuate the taint of a prior violation." United States v. Conklin, 63

M.J. 333, 338 (C.A.A.F. 2006).  The threshold question is whether consent is voluntary, without influence of the prior unlawful search.  This question is examined in light of this Court's ruling in Conklin, and the United States Supreme Court's language in Brown v. Illinois, 422 U.S. 590, 604 (1975) (finding an interval of less than two hours between the illegal arrest and the later incriminating statement insufficient to attenuate the taint).  In order to sufficiently attenuate the taint of a prior violation, a court must examine the consent with respect to three factors:  (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the original unlawful conduct.  Conklin, 63 M.J. at 338 (citing Brown, 422 U.S. at 603-04).  None of these three factors is dispositive of attenuating the taint of the original wrongdoing, but rather they are examined in aggregate to determine the effect of an appellant's consent.  Brown, 422 U.S. at 603-04.

Examining the first factor, the military judge found that the time between the revocation of consent and subsequent consent for search was approximately two months.  This significant amount of time contrasts with the facts of Conklin, in which only less than three hours had elapsed between the illegal search and the consent of the appellant.  Conklin, 63

17

M.J. at 339. However, the actual illegal conduct -- the testing of the urine sample -- did not occur until late July. Additionally, after revoking consent in June, there is no indication that Appellant knew his urine sample was to be tested until he was presented with the positive results on August 26, 2010. The fact that the illegal testing of the urine sample and the August 26, 2010, consent to a second urinalysis and search of Appellant's dorm room were separated by a month may tip this factor in favor of the Government. However, we are mindful of the fact that Appellant was not confronted with the results of the illegal conduct -- the first urinalysis -- until mere hours before giving consent on August 26, 2010, to the subsequent searches. Therefore, this factor does not weigh heavily in favor of the Government.

Factors two and three of the attenuation test fall more clearly on the side of Appellant. As noted by the military judge, it is uncontroverted that there were no intervening circumstances of significance to the investigation between the June 21, 2010, revocation of consent and the events of August 26, 2010. In fact, MSgt Ortega-Llarena stated that, absent the results of the urinalysis, the Government would not have pursued this investigation in any way. As there was no further investigation into the Appellant's alleged drug use between the

submission of the urine sample and the consent, there could have been no new information that could qualify as an intervening circumstance. The military judge therefore did not abuse his discretion in ruling that factor two supports exclusion of the evidence.

Finally, examining the third factor, while there appears to be no willful wrongdoing on the part of the investigators, the military judge held that, once Appellant's revocation of consent was sent out via e-mail on June 21, 2010, the Government should have known that consent had been withdrawn, and negligently failed to act accordingly. This factor, along with factor two, favors Appellant.

In this case, the military judge applied the correct law in addressing derivative evidence. Further, examined in aggregate, the military judge's application of the Conklin factors supports exclusion of the evidence stemming from the events of August 26, 2010. Therefore, the military judge did not abuse his discretion in excluding Appellant's statement and the results of the search of Appellant's dormitory room, as derivative of the Government's earlier search of Appellant's urine seized on June 15, 2010.

CONCLUSION

Accordingly, the decision of the United States Air Force Court of Criminal Appeals is reversed.  The case is returned to the Judge Advocate General of the Air Force for remand to the military judge for further proceedings.

ERDMANN, Judge (concurring in the result):

I concur with the majority's holding that the military judge correctly determined that Dease revoked his consent to search his urine pursuant to M.R.E. 314(e)(3), and that the CCA erred when it concluded that Dease abandoned any reasonable expectation of privacy in his urine sample when he voluntarily provided the sample for chemical analysis. I also agree with the majority's conclusion that under the circumstances of this case, the military judge correctly suppressed the results of the chemical analysis and all derivative evidence and therefore concur in the majority's reversal of the CCA's decision.

I do not agree, however, with the majority's position that "[t]he underlying question, and the question on which the military judge and the lower court split, concerns the application of M.R.E. 314(e)(3)." United States v. Dease, __ M.J. __ (9) (C.A.A.F. 2012). I view the underlying question, and the question on which the military judge and the lower court split, as whether Dease retained a reasonable expectation of privacy in his urine sample after voluntarily providing the sample for chemical analysis. Consistent with the Supreme Court's holding in Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602 (1989) (there are separate privacy interests in the seizure and in the subsequent testing of blood), the military judge correctly concluded that Dease did retain a reasonable

expectation of privacy in his urine sample.  Accordingly, the

military judge determined that pursuant to M.R.E. 314(e)(3)

Dease could and did withdraw his consent to search his urine.[1]

In contrast, the CCA determined that Dease did not retain a

reasonable expectation of privacy in his urine sample.  Although

the CCA did not "bas[e] its analysis on the concept that consent

equals abandonment";[2] citing California v. Greenwood, 486 U.S. 35

(1988), the CCA analogized consensually providing a urine sample

for the purpose of chemical analysis with delivering trash to

the curb.[3]  By abandoning any reasonable expectation of privacy

in his waste urine when he voluntarily provided a urine sample

for chemical analysis, the CCA determined that Dease's Fourth

Amendment rights were not violated and did not find it necessary

to address M.R.E. 314(e)(3).[4]

---

[1] Footnote 5 of the majority opinion implies some significance to what several of the Circuit Courts of Appeals have said on the issue of consent.  In my view, the Circuit Courts of Appeals decisions concerning revocation of consent do not inform our analysis of a revocation of consent pursuant to M.R.E. 314(e)(3).

[2] Dease, __ M.J. at __ (10-11).

[3] United States v. Dease, Misc. Dkt. No. 2011-04, 2011 CCA LEXIS 317, at *10 (A.F. Ct. Crim. App. Sep. 29, 2011).

[4] Id.

United States v. Dease, No. 12-6001/AF

I view this as a straightforward case:[5] First, did Dease retain a reasonable expectation of privacy in his urine sample that he voluntarily provided to the Government for chemical analysis (i.e., do Fourth Amendment protections apply)? Because there is no legally significant difference between the search and seizure of blood and the search and seizure of urine, the holding in Skinner says yes. Second, did the military judge abuse his discretion in determining that Dease could and did revoke his consent to search his urine pursuant to M.R.E. 314(e)(3)? The answer is no. Finally, did the military judge err in determining that the urinalysis results and all derivative evidence were inadmissible? The answer to that question is no as well. Accordingly, while I concur with the reversal of the CCA's decision, I do not join that portion of the majority's analysis noted above.

---

[5] I do not agree with the majority that somehow M.R.E. 314(e)(3) "inform[s] one's judgment regarding Appellant's reasonable expectation of privacy in a urine sample that is voluntarily given" or that the rule "by codifying a right to revoke consent, when viewed in light of the separate privacy interests laid out by the United States Supreme Court in Skinner, implies a continued privacy interest maintained by Appellant in the untested urine sample." Dease, __ M.J. at __ (9-10, 12). M.R.E. 314(e)(3) does neither.