*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Liam C. LATTIN, First Lieutenant
United States Air Force, Appellant

**No. 22-0211**
Crim. App. No. 39859

Argued December 6, 2022—Decided March 31, 2023

Military Judge: Bryan D. Watson

For Appellant: *Elizabeth A. Harvey*, Esq. (argued); *Major Spencer R. Nelson* and *Bethany L. Payton-O'Brien*, Esq. (on brief).

For Appellee: *Major Jay S. Peer* (argued); *Colonel Naomi P. Dennis*, *Lieutenant Colonel Matthew J. Neil,* and *Mary Ellen Payne*, Esq. (on brief); *Lieutenant Colonel Thomas J. Alford.*

Judge MAGGS delivered the opinion of the Court, in which Judge SPARKS and Senior Judge CRAWFORD joined. Chief Judge OHLSON filed a dissenting opinion, in which Judge HARDY joined.

————————

Judge MAGGS delivered the opinion of the Court.

Military Rule of Evidence (M.R.E.) 311(a) (2019 ed.) makes evidence obtained from an unlawful search and seizure inadmissible only when certain conditions are met. One of these conditions is that "exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system." M.R.E. 311(a)(3). By imposing this condition, M.R.E. 311(a) implements the United States Supreme Court's holding that the Fourth Amendment of the United States Constitution requires exclusion of unlawfully obtained evidence only when "the benefits of deterrence . . . outweigh the costs." *Herring v. United States*, 555 U.S. 135, 141 (2009); *see Manual for Courts-Martial, United States*, Analysis of the Military Rules of Evidence app. 22 at A22-20 (2016 ed.) [hereinafter Drafters' Analysis] (explaining that M.R.E. 311(a)(3) implements the *Herring* decision).

In this case, the United States Air Force Court of Criminal Appeals (AFCCA) agreed with Appellant that a search of his cell phone violated the Fourth Amendment because the search authorization was overbroad. *United States v. Lattin*, No. ACM 39859, 2022 CCA LEXIS 226, at *36-37, 2022 WL 1186023, at *13 (A.F. Ct. Crim. App. Apr. 20, 2022) (unpublished). The AFCCA nonetheless concluded that the military judge had not abused his discretion by declining to exclude evidence obtained and derived from the search. *Id.* at *49-57, 2022 WL 1186023, at *18-20. The AFCCA rested its conclusion on the military judge's ruling under M.R.E. 311(a)(3) that exclusion of the evidence *would not* result in appreciable deterrence of future unlawful searches or seizures and that even if it did, the benefits of such deterrence *would not outweigh* the costs to the justice system. *Id.* at *49-57, 2022 WL 1186023, at *18-20.

We granted review of two assigned issues:

> I. Whether the lower court erred when it did not apply the exclusionary rule.

2

II. Whether the lower court erred when it failed to address a search authorization's stated expiration date.

For reasons that we provide below, we answer both questions in the negative.

## I. Background

In January 2019, Cadet A.W. of the Air Force Reserve Officer Training Corps was visiting Luke Air Force Base with her unit. During the visit, Appellant drove Cadet A.W. to his apartment. After they went inside, Appellant forcefully kissed her, bit one of her nipples, penetrated her vagina with his fingers, and engaged in other unwanted sexual conduct. Cadet A.W. subsequently underwent a forensic examination which produced DNA samples.

As part of an ensuing investigation, Special Agent L.B. of the Air Force Office of Special Investigations applied to Appellant's commander for authorization for "a search of the . . . person of" Appellant and authorization for the "seizure, copying and analysis of the following specified property[:] SUBECT's DNA [and] SUBJECT's mobile device with biometric access." Special Agent L.B. attached an affidavit to her application. In the affidavit, Special Agent L.B. stated that during the alleged assault, Cadet A.W. had sent texts to her boyfriend and that Cadet AW's boyfriend had sent texts to Appellant. Special Agent L.B. further explained that the Chief of Military Justice at Luke Air Force Base had advised her to seek authorization to obtain a sample of Appellant's DNA and to seize Appellant's cell phone. The Commander approved the search authorization request without placing any limits on how Special Agent L.B. was to search the phone. The search authorization specified that the authority to search would expire on February 16, 2019.

Pursuant to the authorization to seize Appellant's DNA, Special Agent L.B. obtained swab samples from Appellant. These samples subsequently matched DNA that was present on Cadet AW's left nipple, inside her bra, and on the inside front panel of her leggings. Pursuant to the

authority to seize Appellant's phone, Special Agent L.B. asked Appellant to turn over his phone and he complied.

In her search of the phone, Special Agent L.B. discovered texts between Cadet A.W. and Appellant and between Cadet A.W.'s boyfriend and Appellant. Special Agent L.B., however, also found texts on Appellant's phone that were unrelated to what she had mentioned in her affidavit. In the words of the AFCCA, Special Agent L.B. decided to "rummage [through the phone] for anything that might be interesting for [the Air Force Office of Special Investigation's] investigation into Appellant." *Lattin*, 2022 CCA LEXIS 226, at *52, 2022 WL 1186023, at *19. For example, she searched for texts that mentioned "OSI," the abbreviation of the Office of Special Investigation. She also looked at the texts of individuals who were identified only by their phone numbers rather than their names, "just to see who it was or what they were talking about." Her examination of the phone continued beyond February 16, 2019, the date on which the search authorization expired.

During her search, Special Agent L.B. found texts suggesting that Appellant might have witnessed an unrelated sexual assault in September 2018. Concerned about the information in these texts, Special Agent L.B. contacted First Lieutenant K.A., the victim of this other sexual assault. First Lieutenant K.A. initially had no recollection of the incident in question because she had been intoxicated when it happened. But she did provide information to Special Agent L.B. that, when combined with information in the texts that Appellant had sent, indicated that Appellant might have sexually assaulted her.

Appellant was subsequently charged with sexual assaults of both Cadet A.W. and First Lieutenant K.A. and abusive sexual contact of Cadet A.W. in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2018). Before trial, Appellant moved to suppress the evidence resulting from the search of his phone. He argued that the search of his phone was unlawful primarily because the search authorization was overbroad and because the Government improperly continued to search the phone

after the search authorization had expired. He asked the military judge to exclude "[t]he evidence discovered on [his] phone," which consisted mostly of text messages. He further asked the military judge to exclude any evidence supporting the charges pertaining to First Lieutenant K.A. because those charges "stem[med] from text message[] conversations that occurred in September 2018, none of which would have been located on [Appellant's] phone but for the [G]overnment's . . . illegal search of his entire phone."

At a hearing on the motion, Special Agent L.B. testified about how she had applied for the search authorization and how she had searched the phone. On cross-examination, she explained that her standard practice was to search all information on any phone that comes into the Government's possession because of her understanding that "when there's probable cause for anything on the phone, you can search everything on the phone." She further explained that she learned this practice at a Federal Law Enforcement Training Center. Special Agent L.B. also testified that she believed that she could continue to search the phone after February 16, 2019, because she had seized the phone before that date.

The military judge denied Appellant's motion to exclude the evidence. In a written opinion, the military judge reached the following conclusions: (1) the search authorization was not overbroad, and Special Agent L.B.'s searches of the phone were within the scope of the search authorization; (2) the search of the phone was timely because Special Agent L.B. initiated the search before February 16, 2019; (3) even if Special Agent L.B. had exceeded the scope of the search authorization, the inevitable discovery and good faith exceptions prevented exclusion; and (4) even if the search was unlawful, the exclusionary rule should not apply based on M.R.E. 311(a)(3).

The military judge's fourth conclusion, and the reasoning behind it, stand at the center of this appeal. Accordingly, these matters require special attention. As mentioned above, M.R.E. 311(a)(3) makes the exclusionary rule

inapplicable unless "exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system." Under M.R.E. 311(d)(5)(A), as explained in more depth below, the Government has the burden of proof on this issue. Addressing these requirements, the military judge stated:

> Assuming arguendo that [Special Agent L.B.]'s searches of the accused's phone were unlawful and no exceptions applied, the [G]overnment could still meet their M.R.E. 311(d)(5)(A) burden through demonstration, by a preponderance of the evidence, that the deterrence of future unlawful searches or seizures is not appreciable, or such deterrence does not out-weigh the costs to the justice system of excluding the evidence. *A preponderance of the evidence suggests that they can and have.*

(Emphasis added.)

The military judge supported his conclusion by asserting that "[i]f an error exists in this case, the error rests with the issuing commander, who signed the [search authorization form] without it indicating a more narrow scope." Addressing Special Agent L.B.'s conduct, he asserted that "[a]ny wrong done to the accused's rights was by accident, not design" and that "[t]here is little public good to be had in excluding evidence that was obtained from what must surely be a mistake, if even a mistake at all was made." Focusing on evidence derived from the text messages found on the phone, the military judge added: "To exclude [First Lieutenant K.A.'s] testimony in perpetuity does not result in appreciable deterrence to [Special Agent L.B.] and, even if it did, such deterrence does not out-weigh the costs to the justice system of excluding the live testimony of this particular witness."

A general court-martial comprised of officer members, subsequently tried Appellant. At trial, the Government introduced texts from Appellant's phone. The Government also called as witnesses both A.W. (who by then had been promoted from Cadet to Second Lieutenant) and First

Lieutenant K.A. An expert witness testified that DNA samples taken during Cadet A.W.'s forensic examination matched Appellant's DNA profile.

The court-martial found Appellant guilty, contrary to his pleas, of two specifications of sexual assault and one specification of abusive sexual contact.[1]

On appeal, the AFCCA decided that the search authorization violated the Fourth Amendment because it was overbroad. *Lattin*, 2022 CCA LEXIS 226, at *36-37, 2022 WL 1186023, at *13 (citing *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)). The AFCCA reasoned that the search authorization "failed to identify the data contained on the device for which the Government had probable cause to seize, i.e., text messages related to [Cadet] AW's allegation of sexual assault." *Id.* at *36-37, 2022 WL 1186023, at *13. The AFCCA further decided that the good faith, inevitable discovery, and plain view exceptions to the Fourth Amendment's exclusionary rule did not apply. *Id.* at *37-45, 2022 WL 1186023, at *13-16. The AFCCA did not address Appellant's argument that the search also was unlawful because Special Agent L.B. did not complete it before the expiration date stated in the fourth paragraph of the search authorization. *See id.* at *34-35, 2022 WL 1186023, at *12.

The AFCCA, however, affirmed the military judge's decision not to apply the exclusionary rule to either the text messages on Appellant's phone or First Lieutenant K.A.'s testimony. *Id.* at *56-57, 2022 WL 1186023, at *20. The AFCCA held that the military judge had not abused his discretion by concluding that exclusion of the evidence would not "result[] in appreciable deterrence of future unlawful searches" and that the benefits of future deterrence would not "outweigh the costs to the justice system" under

---

[1] The court-martial found Appellant not guilty of two other specifications not at issue here.

M.R.E. 311(a)(3). *Id.* at *56-57, 2022 WL 1186023, at *20 (citation omitted) (internal quotation marks omitted).[2]

## II. Lawfulness of the Search

An initial question is whether this Court must rule on the lawfulness of the search of Appellant's phone. At trial, as explained above, Appellant argued that the search was unlawful both because the search authorization was over-broad and because Special Agent L.B. continued to search the phone after the expiration date specified in the search authorization. The military judge held that the search was not unlawful for either of these reasons but alternatively held that even if the search was unlawful, the exclusionary rule did not apply. The AFCCA, in contrast, held that the search was unlawful because the search authorization was overbroad and did not reach the question of whether the search was also unlawful because the search authorization had expired. The AFCCA, however, upheld the military judge's determination that the exclusionary rule did not apply.

In this context, we can resolve the appeal without deciding whether the search was unlawful. Instead, we will simply assume that the search was unlawful and proceed directly to the question whether the military judge abused his discretion by not applying the exclusionary rule. Because we ultimately conclude that the military judge did not abuse his discretion, our assumption that the search was unlawful will not prejudice the Government.[3]

---

[2] One judge disagreed. *Id.* at *102, 2022 WL 1186023, at *34 (Cadotte, J., dissenting in part and in the result). The dissenting judge would not have applied the exclusionary rule to First Lieutenant K.A.'s testimony but would have applied it to the text messages and other derivative evidence. *Id.* at *103-04, 2022 WL 1186023, at *37.

[3] The Government asserts in its brief that the issue of whether the search authorization was overbroad "is a close call." The Government, however, recognizes that the scope of the search authorization is not a granted issue in this case, and it

This approach also leads us to answer the second assigned issue in the negative. As quoted above, the second assigned issue asks whether the lower court erred when it failed to address the search authorization's stated expiration date. We hold that the answer is no because the AFCCA held—and we assume without deciding—that the search authorization was unlawful regardless of the expiration date. Accordingly, the AFCCA could proceed, as we also do, directly to the question whether the exclusionary rule should apply.

### III. Application of the Exclusionary Rule

A. Governing Law and Standard of Review

Although the Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands," *Arizona v. Evans*, 514 U.S. 1, 10 (1995), the Supreme Court long ago created an exclusionary rule that forbids the use of improperly obtained evidence at trial. *Weeks v. United States*, 232 U.S. 383, 398 (1914). The Supreme Court has explained that this exclusionary rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348 (1974). In other words, if the government cannot use evidence that the police obtained by violating the Fourth Amendment, the police will have an incentive not to violate the Fourth Amendment.

The exclusionary rule, however, does not apply every time law enforcement officials violate the Fourth Amendment. For example, the Supreme Court has recognized a good faith exception to the rule for when police obtain evidence "in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). More recently, the Supreme Court has articulated a general principle concerning the application of the exclusionary rule. In *Herring*, the Supreme Court held that for the exclusionary rule to apply "the

---

focuses its argument on whether the exclusionary rule should apply.

deterrent effect of suppression must be substantial and outweigh any harm to the justice system." 555 U.S. at 147.

The President has codified the exclusionary rule, as it pertains to courts-martial, in M.R.E. 311(a), which provides:

> (a) Evidence obtained as a result of an unlawful search or seizure made by a person acting in a governmental capacity is inadmissible against the accused if:

> (1) the accused makes a timely motion to suppress or an objection to the evidence under this rule;

> (2) the accused had a reasonable expectation of privacy in the person, place, or property searched; the accused had a legitimate interest in the property or evidence seized when challenging a seizure; or the accused would otherwise have grounds to object to the search or seizure under the Constitution of the United States as applied to members of the Armed Forces; and

> (3) *exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system.*

(Emphasis added.) M.R.E. 311(a)(3), the provision primarily at issue in this case, strives to incorporate the balancing test that the Supreme Court described in its *Herring* decision. *See* Drafters' Analysis app. 22 at A22-20.

Another part of the rule, M.R.E. 311(d)(5)(A), addresses the burden of proof with respect to M.R.E. 311(a)(3), stating:

> [T]he prosecution has the burden of proving by a preponderance of the evidence . . . that the deterrence of future unlawful searches or seizures is not appreciable or such deterrence does not outweigh the costs to the justice system of excluding the evidence.

Parsing this provision reveals that the exclusionary rule does not apply if the Government *either proves* that "the

deterrence of future unlawful searches or seizures is not appreciable" *or proves* that "such deterrence does not outweigh the costs to the justice system of excluding the evidence." For convenience, in the discussion below, we will refer to these two possible showings as the "appreciable deterrence test" and the "balancing test."

This Court reviews a military judge's ruling on a motion to suppress evidence under M.R.E. 311(a) for an abuse of discretion.[4] *United States v. Dease*, 71 M.J. 116, 120 (C.A.A.F. 2012). We recently explained this standard as follows:

> A military judge abuses his or her discretion when: (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence of record, *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010); (2) the military judge uses incorrect legal principles, *id.*; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable, *id.*; or (4) the military judge fails to consider important facts. *See United States v. Solomon*, 72 M.J. 176, 180-81 (C.A.A.F. 2013).

*United States v. Rudometkin*, 82 M.J. 396, 401 (C.A.A.F. 2022).

One issue in applying the abuse of discretion standard of review in this case is deciding how to characterize a military judge's determinations, under M.R.E. 311(d)(5)(A), that "the deterrence of future unlawful searches or seizures is not appreciable" or that "such deterrence does not outweigh the costs to the justice system of excluding the evidence." Are these determinations findings of fact that must be upheld unless they are "clearly erroneous"? Or are they something else?

One might argue that these determinations should be treated as findings of fact because M.R.E. 311(d)(5)(A) requires proof of these matters "by a preponderance of the

---

[4] Appellant and the Government agree that the abuse of discretion standard of review applies.

evidence," which is typical for matters that are findings of fact. But a counterargument is that these matters are not exactly "facts" in the traditional sense. The magnitude of deterrence of "future unlawful searches and seizures" is more of a prediction of what is likely to happen in the future rather than an assessment of something that has already happened. And weighing the benefits of deterrence against the costs to society is more a question of judgment than an issue of fact.[5]

We think that the counterargument is stronger. Accordingly, we will not review the military judge's determinations with respect to the appreciable deterrence test or balancing test merely for clear error. Instead, we think that a less deferential standard should apply and that the question is whether the military judge's assessment of these matters was a "clearly unreasonable" exercise of discretion.[6] *Rudometkin*, 82 M.J. at 401.

### B. Discussion

In this case, as explained above, the military judge ruled that, even if the search was unlawful, the Government had satisfied its burden under M.R.E. 311(d)(5)(A) for showing that the exclusionary rule should not apply to either the text messages or to First Lieutenant K.A.'s testimony. The military judge specifically concluded that the Government had met its burden under the appreciable deterrence test by proving by a preponderance of the evidence that "the deterrence of future unlawful searches or seizures is not appreciable." The military judge also concluded that the Government had met its burden under the balancing test by proving that, even if excluding the evidence would

---

[5] By way of analogy, this Court reviews a military judge's balancing of relevance against prejudice under M.R.E. 403 for an abuse of discretion. *See United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998).

[6] The parties have not argued that we should review the military judge's assessment of these tests de novo.

result in appreciable deterrence, "such deterrence does not out-weigh the costs to the justice system."

The Government makes little effort to defend the military judge's holding with respect to the appreciable deterrence test. Although the military judge concluded that there would be no appreciable deterrence to Special Agent L.B., the Government admits in its brief that "one individual in this case will be deterred by exclusion: [Special Agent L.B.]." For this reason, we will focus our discussion on the "balancing test." Under the applicable standard of review, as discussed above, the question for us is whether the military judge abused his discretion by making a clearly unreasonable determination that "deterrence [would] not outweigh the costs to the justice system." M.R.E. 311(d)(5)(A).

Both parties address this question at length in their briefs. Appellant acknowledges that excluding First Lieutenant K.A.'s testimony would likely result in setting aside the finding that Appellant is guilty of sexually assaulting her. "However," Appellant argues, "this cost does not outweigh the deterrent effect that exclusion of such evidence will provide. Only the loss of a conviction such as this will resonate within the military law enforcement community." Appellant asserts that the loss of the evidence would have the benefit of ensuring (1) the proper instruction of special agents; (2) the proper practice by special agents in general; and (3) the proper practice by Special Agent L.B. in the future. In sum, Appellant concludes: "The cost to the justice system may be high, but the deterrent effect would be greater."

The Government responds that the costs of exclusion are "particularly high" in this case. The Government identifies these costs as: (1) disabling First Lieutenant K.A. from testifying permanently, even though she is an eyewitness and her testimony is relevant and material; (2) requiring the Court to ignore reliable and trustworthy text messages; and (3) shortening the duration of Appellant's incapacitation from committing future offenses. The Government also disagrees about the extent

of the deterrence. Quoting *Herring*, 555 U.S. at 144, the Government explains that a violation of the Fourth Amendment must be " 'sufficiently deliberate that exclusion can meaningfully deter it.' " The Government stresses that even if Special Agent L.B.'s search was unlawful, the military judge properly found that she attempted to respect Appellant's rights. The Government supports this assertion by noting that Special Agent L.B. applied for a search authorization, she had an attorney review her application, and she searched the phone in accordance with what she understood the search authorization to allow. Although Special Agent L.B. testified that she had been taught that she could search the entire contents of any phone in the Government's possession, the military judge could have interpreted Special Agent L.B.'s belief "as a misunderstanding of what she learned about the plain view doctrine" at a Federal Law Enforcement Training Center. The military judge made no finding that instructors are incorrectly instructing military law enforcement agents. And the record does not demonstrate that other members of the military law enforcement community are making the same kinds of mistakes that the AFCCA determined that Special Agent L.B. made in this case.

Counsel for both parties have greatly aided this Court with their careful articulation of their views on the costs to society and the benefits of deterrence that could flow from excluding the evidence. These factors are essential parts of the balancing test in M.R.E. 311(a)(3). But as explained above, the costs to society and the benefits of future deterrence are not historical facts that are either true or false but instead are matters that depend on judgment. As the parties' arguments show, the issue in this case is not one-sided. Regardless of whether we would agree with the military judge's balancing of the costs and benefits on de novo review, we cannot say that the military judge's decision was clearly unreasonable. The high costs of excluding the evidence are undisputed, and while exclusion of the evidence may produce some future deterrence, the degree of

this future deterrence is subject to reasonable disagreement. We therefore conclude the military judge did not abuse his discretion in denying Appellant's motion to suppress the evidence obtained from his phone under M.R.E. 311(a).

## IV. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge OHLSON, with whom Judge HARDY joins, dissenting.

This case does not involve complex and cutting-edge search techniques for smartphones or computers, nor does it involve search and seizure issues unique to the military and its mission. Rather, we are presented here with a classic and straightforward example of a blatantly unconstitutional fishing expedition by law enforcement. As the Supreme Court has noted, it is precisely this type of "wide-ranging exploratory search[ which] the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). And yet here, the majority fails to enforce the constitutional rights of Appellant through the invocation of the exclusionary rule, despite the fact that such exclusion is necessary and warranted in order to deter future unlawful searches, and despite the fact that such deterrence outweighs the costs to the justice system. For these reasons, I respectfully dissent.

**The Relevant Facts**

The facts of this case are key. Simply stated, Special Agent L.B. impermissibly and indiscriminately rummaged through Appellant's personal cell phone, opening and reading communications that were patently unrelated to the isolated incident that gave rise to the search authorization. The narrow purpose of the search authorization was to confirm that communications regarding an alleged sexual assault occurring during the early morning hours of January 26, 2019, actually came from Appellant's phone. Further, based on the information provided to her, Special Agent L.B. reasonably knew that Appellant and the victim had never met nor communicated before that date. But rather than limiting her search for communications from *on or after* January 25, 2019—the day the victim met Appellant for the first time—Special Agent L.B. searched through Appellant's personal cell phone and read immaterial communications from *months before* that date involving individuals *unrelated* to the January 26th incident. What is more, Special Agent L.B. testified that she read these random conversations "*just to see who it was or what they were talking about.*" (Emphasis

added.) This admission by Special Agent L.B. about the voyeuristic nature of her search is quite extraordinary, and it is absolutely alarming in the context of whether the privacy rights of our servicemembers are being adequately protected by military law enforcement officers.

During the suppression hearing, Special Agent L.B. further affirmed her belief that "she could search [Appellant's] whole phone" because "when there's probable cause for *anything* on the phone, [law enforcement] can search *everything* on the phone." (Emphasis added.) Moreover, Special Agent L.B. stated that she had conducted cell phone searches in this manner *for the last two years*, and she testified that she was *taught to search this way* at the Federal Law Enforcement Training Center (FLETC). These are sure signs of both recurring and systemic negligence—or worse. And when Special Agent L.B.'s rummaging eventually uncovered ambiguous evidence of another potential crime, she failed to seek a new search authorization, blithely asserting that "there was no need to get an expanded scope."

As can be seen then, the facts of this case present us with a glaring and systemic contravention of Appellant's constitutional rights that must not be tolerated in the military justice system. Accordingly, I write to express my firm belief that the majority should have applied the exclusionary rule here to not only ensure that this particular appellant's rights were vindicated but also to incentivize military law enforcement officials not to similarly violate other servicemembers' Fourth Amendment rights in the future.

### The Search Authorization Was Unlawful

Both parties agree that the search in this case was unlawful. I commend the Government for making this concession upfront. Oral Argument at 34:30–34:35, *United States v. Lattin*, No. 22-0211 (C.A.A.F. Dec. 6, 2022). Further, the majority assumes that the search authorization was unlawful for purposes of its analysis. Indeed, the search authorization was facially deficient because it was not reasonable for the commander to authorize a search of Appellant's phone without *any* parameters about what information or

applications could be searched, seized, and analyzed in Appellant's phone.[1]

Because the search authorization was unlawful, any search stemming from that authorization was unlawful as well. And importantly, the lower court held that good faith, inevitable discovery, and the plain view doctrine—exceptions to the exclusionary rule that otherwise might have supported the admission of the evidence obtained from Special Agent L.B.'s unlawful search—do not apply here. The Government does not directly challenge the lower court's holding on these points. Consequently, the key issue before us is whether the exclusionary rule should apply.

### The Exclusionary Rule Should Apply Here

Because Special Agent L.B.'s unlawful search was reckless or grossly negligent, and because her unlawful conduct was evidence of recurring and systemic negligence, the exclusionary rule should have been applied here. The military judge's determination that Special Agent L.B. acted reasonably, and that this case did not involve recurring or systemic negligence on the part of law enforcement, was clearly erroneous and failed to consider important facts. Thus, the military judge abused his discretion in denying Appellant's motion to suppress the unlawfully obtained evidence.

The Supreme Court has held, "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). The "exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Davis v. United States*, 564 U.S. 229, 237 (2011). In essence, these competing principles can be distilled to two key factors put forward by the

---

[1] The relevant part of the search authorization allowed, without restrictions, for the "seizure, copying, and analysis of [Appellant's] mobile device with biometric access."

Supreme Court in *Davis*: (a) "When [law enforcement officers] exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights," or "the case involve[s] 'recurring or systemic negligence' on the part of law enforcement," "the deterrent value of exclusion is strong and tends to outweigh the resulting costs," but (b) "when [law enforcement officers] act with an objectively 'reasonable good-faith belief' that their conduct is lawful, or when their conduct involves only simple, 'isolated' negligence, the 'deterrence rationale loses much of its force.' " *Id.* at 238, 240 (citations omitted).

As noted by the majority, these two competing principles have been codified in M.R.E. 311(a)(3). The exclusionary rule should apply under two conditions: (1) when "exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures," *and* (2) when "the benefits of such deterrence outweigh the costs to the justice system." M.R.E. 311(a)(3). For the sake of convenience and for consistency with the majority opinion, I will also refer to these two conditions as the "appreciable deterrence test" and the "balancing test."

### The Appreciable Deterrence Test

For reasons I find puzzling, the majority glides over the "appreciable deterrence test" and instead focuses on the "balancing test." The majority perhaps assumes, without explanation, that the *only* person who could be deterred by the application of the exclusionary rule is Special Agent L.B. herself.) Perhaps they take this position based on the Government's claim that only " 'one individual in this case will be deterred by exclusion: [Special Agent L.B.].' " *United States v. Lattin*, __ M.J. __, __ (13) (C.A.A.F. 2023) (quoting Brief for Appellee at 49, *United States v. Lattin*, No. 22-0211 (C.A.A.F. Oct. 26, 2022)).

It presumably is true that Special Agent L.B. would be deterred if the exclusionary rule were to apply here. But she is far from the only consideration. The search authorization was patently facially invalid. Applying the exclusionary rule here would thus serve to deter other Air Force Office of Special Investigations (AFOSI) agents from similarly requesting grossly overbroad search authorizations.

In fact, this deterrence principle would apply to all those involved in criminal investigations—to include judge advocates who, as in the instant case, may be presented with facially and conspicuously deficient language in a search authorization and must choose whether or not to fulfill their professional obligation to protect the rights of our servicemembers by simply saying, "No. This material does not pass constitutional muster."[2]

In sum, the message that would be sent by the invocation of the exclusionary rule in this case would be clear: Evidence obtained from facially invalid search authorizations may be subject to suppression—not just in an academic, hypothetical, and remote sense but in a real, concrete, and principled sense.

### The Balancing Test

The majority writes that "the costs to society and the benefits of future deterrence are not historical facts that are either true or false but instead are matters that depend on judgment." *Lattin*, __ M.J. at __ (14). Be that as it may, the duty of this Court is demonstrably clear—we must determine whether the military judge abused his discretion in evaluating the information presented. Discerning the costs and benefits are indeed "matters that depend on judgment," but that judgment must nonetheless be reasonable. *Id.* And, as discussed below, the military judge's conclusions in this case were clearly *un*reasonable and hence his

---

[2] There were at least three individuals involved in drafting and approving the search authorization. Special Agent L.B. prepared the search authorization (Air Force Form 1176). Appellant's group commander, Colonel M.R., signed off on the overly broad search authorization. Judge Advocate Captain W.T. read over Special Agent L.B.'s affidavit, explained probable cause standards to Colonel M.R., and, concerningly, reviewed the search authorization to provide legal feedback. In addition, there were at least two AFOSI agents involved in executing the search authorization—Special Agent L.B. and another AFOSI agent. Applying the exclusionary rule here would also deter such law enforcement personnel—not just Special Agent L.B.—from conducting completely unreasonable searches based on facially invalid search authorizations.

disposition of the motion to suppress constituted an abuse of discretion.

## I. Special Agent L.B.'s unlawful search was reckless or grossly negligent

There are two primary reasons why the military judge clearly erred when he found that Special Agent L.B. was not reckless or grossly negligent in conducting this search. First, Special Agent L.B. searched for text message conversations that predated the incident with Cadet A.W. by *more than four months*—despite having no reason to think Appellant and the victim had met or been in communication with each other prior to that incident. Indeed, Cadet A.W. previously provided AFOSI with the relevant communications, and Special Agent L.B.'s justification for the search was to merely corroborate their existence. This blatant departure from the original purpose of the search demonstrates that Special Agent L.B.'s conduct was unreasonable, and it serves as a concerning display of Special Agent L.B.'s misunderstanding of the scope of her authority. Second, Special Agent L.B. knew the phone numbers of the victim and witnesses of the January 26, 2019, incident, and yet she searched through Appellant's personal cell phone and read conversations with *other* unsaved contacts. There simply was no reasonable justification for Special Agent L.B.'s actions.

AFOSI began investigating the incident between Appellant and Cadet A.W. on January 26, 2019, the same day as the alleged assault. Special Agent L.B. took over the case sometime in February 2019. She *knew* the incident between Appellant and Cadet A.W. occurred during the early morning hours of January 26, 2019. She also presumably knew from reviewing Cadet A.W.'s interview and the text messages Cadet A.W. provided that Appellant and Cadet A.W. had never met before and had never texted before the incident in question. Therefore, once Special Agent L.B. obtained Appellant's phone, she should have known she was looking for evidence related to an incident from late January 2019 between two people who had neither met nor texted before that date. Any reasonable person would recognize that evidence relating to that incident would have been generated *on or after January 25*, the day Appellant

and the victim first met. However, Special Agent L.B. scrolled through messages from at least as far back as August 2018. Searching messages from before the date of the incident—*let alone more than four months before*—amounts to a fishing expedition in the starkest sense, and it was done in violation of Appellant's Fourth Amendment rights.

It must be borne in mind that Special Agent L.B., a military criminal investigator, was no naïf who was oblivious to the iPhone interface. She accurately testified that "the way the I-phone works is it shows all the recent messages first, by contact, and then the only text that shows up is the most recent text message exchange." She knew that text conversations are saved and displayed in a chronological manner; the information displayed is functionally equivalent to an email inbox. Special Agent L.B. should have reasonably known then that text threads related to the incident with Cadet A.W. would necessarily have occurred on or after January 25. Yet alarmingly, Special Agent L.B. seemed unconcerned by any temporal constraints on her search. In response to the question about whether she believed "[t]hat when there's probable cause for anything on the phone, you can search everything on the phone," she responded, "Yes."

Special Agent L.B. also testified she was looking for conversations between certain identified individuals and "she knew what phone numbers to look for." She further testified that as she searched through Appellant's phone, she noticed Cadet A.W. was not saved as a contact. In other words, Cadet A.W.'s phone number was listed without a corresponding name. Remarkably, Special Agent L.B. then (somehow) concluded that *any* conversation with an unsaved contact was fair game for review because they might contain evidence of other potential victims. As noted above, in an extraordinarily damaging concession, Special Agent L.B. candidly explained that she looked through these conversations with other unsaved contacts "just to see who it was or what they were talking about." Because she knew what phone numbers were relevant in her search for evidence related to Cadet A.W., it was completely unreasonable for her to randomly search through these nonresponsive

phone numbers for evidence of "any other victims that could be out there." Thus, at a minimum, Special Agent L.B.'s conduct was reckless or grossly negligent.

In addition to the military judge's findings being clearly unreasonable, he also misapprehended the law when he applied our reasoning and holding in *United States v. Richards*, 76 M.J. 365 (C.A.A.F. 2017). This case is clearly distinguishable. In *Richards*, we did indeed cite with approval the United States Court of Appeals for the Sixth Circuit's observation that "[t]he prohibition of general searches is not to be confused with a demand for precise *ex ante* knowledge of the location and content of evidence." *Richards*, 76 M.J. at 369 (emphasis added) (internal quotation marks omitted) (quoting *United States v. Richards*, 659 F.3d 527, 541 (6th Cir. 2011)). But we also underscored, as the United States Court of Appeals for the Ninth Circuit pithily opined, " 'As always under the Fourth Amendment, the standard is reasonableness.' " *Id.* (quoting *United States v. Hill*, 459 F.3d 966, 974 (9th Cir. 2006)). And importantly, we dropped a footnote stating: "Obviously, what is reasonable in one instance may not be so in another." *Id.* at 369 n.6.

In *Richards*, the search was not only for communications but also for images. And "computer files [containing images] may be manipulated to hide their true contents." *Id.* at 370 (internal quotation marks omitted) (quoting *United States v. Mann*, 592 F.3d 779, 782 (7th Cir. 2010)). But folders on a computer are not chronologically ordered text threads on an iPhone. In the instant case, there was simply no basis for Special Agent L.B. to conclude that the old text messages she opened and read were related to any effort by Appellant to "hide, mislabel, or manipulate files to conceal criminal activity." *Id.* (internal quotation marks omitted) (quoting *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011)). Again, I emphasize that while a more expansive search authorization may have been reasonable in *Richards* given the uncertainty as to when the crime occurred, it was not reasonable here for Special Agent L.B. to rummage through texts on Appellant's phone that were exchanged *four months prior* to the alleged assault.

The military judge's misapplication of *Richards* colored his view of the reasonableness of Special Agent L.B.'s actions. According to the military judge, "when searching an electronic device . . . 'there may be no practical substitute for actually looking in many (perhaps all) folders.' " (quoting *Richards*, 76 M.J. at 370). The takeaway the military judge instead should have gleaned from our *Richards* opinion is the following statement contained within it: "[T]he authorization and accompanying affidavit [although broad] did not give authorities carte blanche to search in areas [of the appellant's electronic devices that were] clearly outside the scope of the crime being investigated." *Id.*

## II. Special Agent L.B.'s unlawful conduct and her testimony establish recurring and systemic negligence

As further evidence that law enforcement here was "sufficiently culpable" to warrant the invocation of the exclusionary rule, *Herring*, 555 U.S. at 144, the record strongly suggests that Special Agent L.B.'s conduct was not an isolated incident. She herself testified that it's been her "standard practice" for the past *two years* to search for anything on a seized phone. According to Special Agent L.B., she had a "right to be in the phone," and if she saw "something that [led her] to believe there's evidence of [another] crime . . . there was no need to get an expanded scope." Her significantly misguided understanding of what she could lawfully search for in a cell phone seized pursuant to a search authorization, and the fact that she had conducted her searches this way for years, is sufficient evidence of recurring negligence.

And in terms of there being a systemic problem, Special Agent L.B. testified that she (supposedly) learned her search methodology from the Federal Law Enforcement Training Center. As observed by the majority, the military judge made no finding that instructors at FLETC are incorrectly instructing military law enforcement agents. *Lattin*, __ M.J. at __ (14). But neither did the Government introduce evidence to rebut its own witness's assertion. And the mere fact that Special Agent L.B. *believes* FLETC taught her she can search the entire contents of a phone whenever it is seized suggests FLETC may not be appropriately drilling into its graduates a scrupulous

appreciation of the fundamentals of Fourth Amendment rights. In addition, Special Agent L.B. testified that it was her practice in cases such as this one to input search parameters based on her discussions with "legal" [i.e., a judge advocate].

Thus, as can be seen from all of the points above, the Government's own star witness makes it clear that we are confronted with a systemic violation of servicemembers' constitutional rights.

### III. The price paid by the justice system

As the Supreme Court has stated, "The principal cost of applying the [exclusionary] rule is, of course, letting guilty and possibly dangerous defendants go free." *Herring*, 555 U.S. at 141. It is important to underscore, however, that in the instant case that "principal cost" would not have materialized if the exclusionary rule had been properly applied because the evidence that sustained Appellant's convictions against Cadet A.W. was untainted by the unlawful search. As a result, the exclusion of the unconstitutionally obtained evidence would have had no effect on Appellant's other convictions; he still would remain guilty of sexual assault and abusive sexual contact involving Cadet A.W. In short, excluding the improperly obtained evidence would not have let this "guilty and possibly dangerous defendant[] go free." *Id.*

Nonetheless, it is still critical to acknowledge that the personal trauma endured by First Lieutenant K.A. would not be reflected in the results of Appellant's court-martial. That fact is certainly lamentable. Unfortunately, however, this result is an outgrowth of the Government's improper conduct and is a cost that society must bear under these circumstances. Simply stated, the exclusion of the evidence in this case would serve as a compelling deterrent to future unlawful searches, and this deterrence would outweigh the resulting social costs. Indeed, to hold otherwise, as the majority does, essentially grants law enforcement carte blanche when it comes to drafting search authorizations without even coming close to "particularly describing the place to be searched, and the persons or things to be seized," U.S. Const. amend. IV, and when it comes to

conducting completely unreasonable searches based on those overly broad search authorizations.

## Conclusion

We must do better in protecting the constitutional rights of those who serve in our armed forces. Accordingly, I would hold that the military judge abused his discretion when he declined to impose the exclusionary rule in this case.[3] Because the majority holds to the contrary, I respectfully dissent.

---

[3] Because of my proposed disposition of this case, I need not reach Issue II.